UN SEALED 3-5-93 orally

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in October 29, 1990

CL:

92- 0474

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Cr. No. |
| | : | Grand Jury Original |
| v. | : | |
| | : | Violations: |
| WAYNE ANTHONY PERRY | : | |
| TYRONE LASALLE PRICE | : | 21 U.S.C. §846 |
| MICHAEL ANTHONY JACKSON | : | (Conspiracy to Distribute |
| | : | Cocaine, Cocaine Base, and to |
| | : | Participate in a Continuing |
| | : | Criminal Enterprise) |
| | : | (Count 1) |
| | : | |
| | : | 18 U.S.C. §1962(d) |
| | : | (Conspiracy to Participate in a |
| | : | Racketeering Influenced Corrupt |
| | : | Organization) |
| | : | (Count 2) |
| | : | |
| | : | 21 U.S.C. § 848(e)(1)(A) |
| | : | (Murder in Furtherance of |
| | : | a Continuing Criminal |
| | : | Enterprise) |
| | : | (Counts 3,5,7,9,11,13,&17) |
| | : | |
| | : | 18 U.S.C. § 924(c)(1) |
| | : | (Use and Carrying of a Firearm |
| | : | in Aid of a Crime of Violence |
| | : | and a Drug Trafficking Crime) |
| | : | (Counts 19 - 25) |
| | : | |
| | : | 22 D.C. Code §2401 and 3202 |
| | : | (First  Degree  Murder  While |
| | : | Armed) |
| | : | (Counts 4,6,8,10,12,14,&18) |
| | : | |
| | : | 18 U.S.C. §1513 |
| | : | (Retaliating Against a Witness |
| | : | (Count 15) |
| | : | |
| | : | 22 D.C. Code §§ 2101, 3202 |
| | : | (Kidnapping and Kidnapping While |
| | : | Armed) |
| | : | (Counts 16, 26) |

FILED IN OPEN COURT

MAR 0 4 1993

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

HOGAN, J.

B


SUPERSEDING

2

```
      :     22 D.C. Code §§2901 and 3202
      :     (Robbery While Armed)
      :     (Count 27)
      :
      :     18 U.S.C. §2 and
      :     22 D.C. Code §105
      :     (Aiding and Abetting)
```

## I N D I C T M E N T

The Grand Jury Charges that :

### COUNT ONE

A. The Conspiracy

Beginning in or about the Spring of 1988, the exact date being unknown to the grand jury, and continuing thereafter up to and including December 18, 1991, within the District of Columbia, the Eastern District of Virginia, the District of Maryland, the Southern and Eastern Districts of New York, the Northern District of Ohio, and elsewhere, the defendants WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, and MICHAEL ANTHONY JACKSON, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree together, with each other, with Albert G. Martinez, with co-conspirators not indicted herein, and with others known and unknown to the Grand Jury,

a) to unlawfully, knowingly, and intentionally possess with intent to distribute, and distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(ii); and

b) to unlawfully, knowingly, and intentionally possess

with intent to distribute and distribute 50 grams or more of a
mixture and substance containing a detectable amount of cocaine
base, a Schedule II narcotic drug controlled substance, in
violation of Title 21, United States Code, Section 841(a)(1) and
(b)(1)(A)(iii).

### B. Goal of the Conspiracy

It was the goal of the conspiracy to acquire money and other
things of value, by obtaining quantities of cocaine and cocaine
base for resale in the District of Columbia and elsewhere.

### C. Manner and Means to Accomplish the Conspiracy

The defendants and other co-conspirators both known and
unknown to the Grand Jury used the following manner and means to
accomplish the objects of the conspiracy:

1. WAYNE ANTHONY PERRY was the chief enforcer and
body guard for Albert G. Martinez and the drug conspiracy. The
conspiracy, a confederation referred to collectively as the
Martinez drug organization, operated as an organization controlled
and directed by Albert G. Martinez, also known as "Alpo." WAYNE
ANTHONY PERRY, and his associates, TYRONE LASALLE PRICE, MICHAEL
ANTHONY JACKSON, and other co-conspirators both known and unknown
to the grand jury including Thomas Leroy Dozier, deceased, Shelton
Cortez Watkins, deceased, and Garrett Terrell, deceased, used armed
and unarmed force, violence, and intimidation, including murder,
kidnapping and robbery, to promote, protect, and to perpetuate the
illegal drug trafficking operations of the Martinez drug
organization, and to enhance the reputation of the conspiracy as a

4

group to be feared.  WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, MICHAEL ANTHONY JACKSON, and other unindicted co-conspirators both known and unknown to the grand jury, acted at the direction of Albert G. Martinez, or with his approval or ratification, and thereby intentionally killed persons who were witnesses against the drug organization, who were suspected of being police informants against the drug organization or any of its members, who had not paid drug debts to members of the drug organization in a timely fashion, who were drug trafficking competitors of the drug organization, and who although fellow co-conspirators, were nevertheless suspected of planning to take for their own use, illegal drugs or proceeds from the drug organization.  On occasion, WAYNE ANTHONY PERRY and Albert G. Martinez would engage the services of others, such as MICHAEL ANTHONY JACKSON, for hire to commit murders and other crimes of violence to further the goal of the conspiracy.

2.   WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, MICHAEL ANTHONY JACKSON, and other unindicted co-conspirators both known and unknown to the grand jury, were compensated by Albert G. Martinez with drugs and proceeds obtained from drug trafficking crimes and crimes of violence.  In exchange for services rendered in furtherance of the conspiracy by WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, MICHAEL ANTHONY JACKSON, and other unindicted co-conspirators both known and unknown to the grand jury, Albert G. Martinez would purchase for them and for their use automibiles, clothing, beepers, telephones, and other things of value, and would

defray their living expenses.

3. WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, MICHAEL ANTHONY JACKSON, and other unindicted co-conspirators both known and unknown to the grand jury, accepted firearms acquired by and supplied to them by Albert G. Martinez, which they in turn used, possessed, and carried to protect quantities of cocaine and cocaine base, along with the proceeds generated by such illegal drug trafficking, and which they used, possessed, and carried to protect and promote the individual safety of the defendants and co-conspirators from theft, robbery, interference, competition, and detection from law enforcement.

4. Albert G. Martinez, either alone or with others, or through the use of couriers, would travel to New York and elsewhere, to obtain multi-kilogram quantities of cocaine and deliver the same to his lieutenants and other illegal drug dealers in the District of Columbia, Virginia and Maryland for repackaging and resale or for processing into cocaine base, also known as crack cocaine, before repackaging and resale. Over the course of the conspiracy, Albert G. Martinez transported and caused the transportation of more than 500 kilograms of cocaine from New York to the District of Columbia, the Eastern District of Virginia and the District of Maryland. Over the course of the conspiracy, Albert G. Martinez thereby distributed approximately 200 kilograms of cocaine to David Mark Armstrong, 300 kilograms of cocaine to Garrett Terrell, and 250 kilograms of cocaine to Andre Johnson. Martinez also distributed smaller quantities of cocaine to Shelton

6

Cortez Watkins, Nathaniel Watkins and Sherrille Gilbert.   WAYNE
PERRY, TYRONE LASALLE PRICE, MICHAEL ANTHONY JACKSON, and other
unindicted co-conspirators both known and unknown to the grand
jury, accepted quantities of cocaine from Albert G. Martinez in
exchange for services or for redistribution and resale.

### D. Overt Acts

In furtherance of the Martinez drug organization and in order
to effect the objects thereof, the defendants and other co-
conspirators known and unknown to the grand jury, committed overt
acts including but not limited to the following:

1.  On or about July, 1989, the exact date being unknown
to the grand jury, within the District of Columbia, Albert G.
Martinez procured Shelton Cortez Watkins and another co-conspirator
not indicted herein, to kill Lawrence Denny Harris upon learning
that Lawrence Denny Harris intended to steal a quantity of cocaine
from the Martinez drug organization.

2.  On or about July 25, 1989, within the District of
Columbia, Albert G. Martinez, Shelton Cortez Watkins and another
person whose identity is known to the grand jury, while armed with
a 9 mm pistol, purposefully and with deliberate and premeditated
malice killed Lawrence Denny Harris by shooting him with a pistol,
thereby causing injuries from which Lawrence Denny Harris died on
or about July 25, 1989.

3.  On or about July 25, 1989, within the District of
Columbia, Albert G. Martinez, Shelton Cortez Watkins and another
person whose identity is known to the grand jury, while armed with

a 9 mm pistol, attempted to murder Ricky Ellis.

4. On or about December, 1989, the exact date being unknown to the grand jury, within the District of Columbia and elsewhere, WAYNE ANTHONY PERRY and Shelton Cortez Watkins suggested to Albert G. Martinez that they kill David W. Short, also known as David Dew, also known as "Duke," because they believed that he was planning to steal money and cocaine from the Martinez drug organization and possibly kill Albert G. Martinez.

5. On or about December 26, 1989, within the District of Maryland, WAYNE ANTHONY PERRY, together with Albert G. Martinez, and Shelton Cortez Watkins, while armed with a 25 caliber pistol, and a 38 caliber firearm, purposefully and with deliberate and premeditated malice killed David W. Short, also known as David Dew, also known as "Duke," by shooting him, thereby causing injuries from which David W. Short died on or about December 26, 1989, in violation of laws of the State of Maryland.

6. On or about May 12, 1990, within the District of Columbia WAYNE ANTHONY PERRY distributed a quantity of illegal drugs to James Hinson for which Hinson was indebted and which debt Hinson failed to pay.

7. On or about May 12, 1990, within the District of Columbia, WAYNE ANTHONY PERRY while armed with a pistol, purposely and with deliberate and premeditated malice, killed James Hinson by shooting him with a .380 caliber pistol, thereby causing injuries from which James Hinson died on or about May 12, 1990.

8. On or about November 15, 1990, at the direction of

8

Albert G. Martinez, Kevin Jerome Dockett purchased a telephone paging device assigned number (301) 507-7602 from Pagenet, College Park, Maryland, billed under his own name but for use by Albert G. Martinez.

9. On or about January 25, 1991, at the direction of Albert G. Martinez, Kevin Jerome Dockett ordered, and placed in his own name, two cellular telephones through Cellular One, Baltimore, Maryland with telephone numbers (301) 919-3140 and (301) 919-3141, for use by Albert G. Martinez and others members of the Martinez drug organization.

10. On or about February 10, 1991, in New York, Albert G. Martinez paid approximately $6000 to Michael Kelly in exchange for ten 9 millimeter semi-automatic pistols for use by members of the Martinez drug organization.

11. On or about February 24, 1991, in New York, Albert G. Martinez purchased eight 9 millimeter pistols from Michael Kelly for use by members of the Martinez drug organization.

12. On or about February 27, 1991, in New York, Albert G. Martinez purchased thirteen 9 millimeter pistols from Michael Kelly for use by members of the Martinez drug organization.

13. On or about July, 1991, the exact date being unknown to the grand jury, within the District of Columbia, WAYNE ANTHONY PERRY and Albert G. Martinez decided to eliminate a rival drug dealer from New York named Domencio Benson as they concluded that he posed a threat to the Martinez drug organization.

14. On or about July 16, 1991, within the District of

9

Columbia, WAYNE ANTHONY PERRY, together with Albert G. Martinez and Thomas Leroy Dozier, while armed with a 9 mm pistol, purposely and with deliberate and premeditated malice, killed Domencio Benson by shooting him with a 9 mm pistol, thereby causing injuries from which Domencio Benson died on or about July 16, 1991.

15.  On or about July, 1991, the exact date being unknown to the grand jury, within the District of Columbia and elsewhere, WAYNE ANTHONY PERRY and Albert G. Martinez received information from MICHAEL ANTHONY JACKSON that a rival drug dealer named Michael Salters, also known as Michael Frey was planning to kill Albert G. Martinez in order to disrupt the Martinez drug organization.

16. On or about July, 1991, the exact date being unknown to the grand jury, within the District of Columbia and elsewhere, WAYNE ANTHONY PERRY together with Albert G. Martinez offered MICHAEL ANTHONY JACKSON approximately $9,000 in cash, a half-kilogram of cocaine and a 9 mm semi-automatic pistol if he would kill Michael Salters also known as Michael Frey.

17.  On or about July 16, 1991, within the District of Columbia, MICHAEL ANTHONY JACKSON, together with WAYNE ANTHONY PERRY and Albert G. Martinez, while armed with a 9 mm pistol, purposely and with deliberate and premeditated malice, killed Michael Salters also known as Michael Frey, by shooting him with a 9mm pistol, thereby causing injuries from which Michael Salters also known as Michael Frey died on or about July 17, 1990.

18.  On or about July 20, 1991, within the District of Columbia, WAYNE ANTHONY PERRY told Albert G. Martinez that he

wanted to kill Evelyn Carter because she had been telling people that he (WAYNE ANTHONY PERRY) had been responsible for killing Michael Salters, also known as Michael Frey.

19.  On or about July 20, 1991, within the District of Columbia, WAYNE ANTHONY PERRY, together with Albert G. Martinez and Thomas Leroy Dozier, while armed with a 9 mm pistol, purposely and with deliberate and premeditated malice, killed Evelyn Carter by shooting her with a 9 mm pistol, thereby causing injuries from which Evelyn Carter died on or about July 21, 1990.

20.  On or about September, 1991, the exact date being unknown to the grand jury, within the District of Columbia, WAYNE ANTHONY PERRY informed Albert G. Martinez that he wanted to kill Yolanda Burley because he suspected that she was conveying information about the Martinez drug organization to law enforcement authorities.

21. On or about September 24, 1991, within the District of Columbia, WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, together with Albert G. Martinez and Thomas Leroy Dozier, while armed with a 10 mm pistol and a dangerous and deadly weapon, that is a knife, purposely and with deliberate and premeditated malice, killed Yolanda Burley by shooting her with a 10 mm pistol and by stabbing her with a knife, thereby causing injuries from which Yolanda Burley died on or about September 24, 1991.

22.  On or about September 28, 1991, in the District of Columbia, WAYNE ANTHONY PERRY informed Albert G. Martinez that he wanted to kill Alveta Hopkins because she had informed law

11

enforcement authorities and a grand jury that she had witnessed him (PERRY) shoot and kill James Hinson.

23.  On or about September 28, 1991, within the District of Columbia, the defendants WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, together with Albert G. Martinez, and others known and unknown to the grand jury, seized, confined, kidnapped, abducted, and carried away Alveta Hopkins with intent to hold and detain Alveta Hopkins for the purpose of assaulting her.

24. From on or about September 28, 1991 to on or about September 29, 1991, within the District of Columbia, WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, together with Albert G. Martinez, Thomas Leroy Dozier and others known and unknown to the grand jury, while armed with a .32 caliber pistol, purposely and with deliberate and premeditated malice, killed Alveta Hopkins by shooting her with a .32 caliber pistol thereby causing injuries from which Alveta Hopkins died on or about September 29, 1991.

25. In or about the month of October, 1991  until November 7, 1991, WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, together with Thomas Leroy Dozier, Jerome Kearney, Albert G. Martinez, and other co-conspirators not indicted herein, unlawfully, knowingly and intentionally distributed approximately 150 grams of cocaine, a Schedule II narcotic drug controlled substance, in the Potomac Gardens apartment complex in Washington, D.C. which cocaine was supplied by Albert G. Martinez.

26.  On or about the month of October, 1991, the exact date being unknown to the grand jury, within the District of

Columbia, MICHAEL ANTHONY JACKSON informed WAYNE ANTHONY PERRY and Albert G. Martinez that Garrett Terrell was planning to rob the Martinez drug organization of an expected 100 kilogram cocaine shipment along with cash to be used as the down payment for the cocaine.

27.   From on or about October 22, 1991 to on or about October 23, 1991, within the District of Columbia, WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, together with Albert G. Martinez, Thomas Leroy Dozier, Jerome Kearney and other conspirators known and unknown to the grand jury, while armed with .38 caliber and 9 mm pistols, purposely and with deliberate and premeditated malice, killed Garrett Terrell by shooting him with .38 caliber and 9 mm pistols thereby causing injuries from which Garrett Terrell died on or about October 23, 1991.

28.   On or about November, 1991, the exact date being unknown to the grand jury, within the District of Columbia, the District of Maryland and elsewhere, Kevin Jerome Dockett possessed approximately $472,000 in cash which represented drug proceeds of the Martinez drug organization which Albert G. Martinez had given him to safeguard.

29.   On or about November 7, 1991, within the District of Columbia, Albert G. Martinez transported 104.11 grams of cocaine in an Isuzu Trooper automobile along with $3,186.00 and a 9 mm Taurus semi-automatic pistol serial number TJ159430.

30.   On or about November 7, 1991, within the District of Columbia, Albert   G.   Martinez   unlawfully,   knowingly   and

intentionally did possess with the intent to distribute 104.11 grams of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotics drug controlled substance.

31.   On or about November 7, 1991, in Arlington, Virginia, Albert G. Martinez stored approximately 412.76 grams of cocaine, along with 6,000 vials used for packaging cocaine, $5,500 in cash and a 9 mm semi-automatic Taurus pistol serial number TJJ66850, in a blue BMW car.

32.   On or about November 7, 1991, in Arlington, Virginia, Albert G. Martinez unlawfully, knowingly and intentionally did possess with the intent to distribute 412.76 grams of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotics drug controlled substance.

(In violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A)(ii and iii)).

## COUNT TWO

### RICO CONSPIRACY

A.   The Enterprise

1.   Beginning on or about the Spring of 1988, up through and including December 18, 1991, Albert G. Martinez, also known as "Alpo," headed an organization known collectively as the Martinez drug organization, which was based primarily in the District of Columbia.  The Martinez drug organization constituted an enterprise as defined by Title 18, United States Code, Section 1961(4); that is, a group of individuals associated in fact in the District of Columbia and elsewhere.  The activities and criminal conduct of the Martinez drug organization affected interstate and foreign commerce

and were conducted in the District of Columbia, the District of Maryland, the Eastern District of Virginia, Southern and Eastern Districts of New York, the Northern District of Ohio, and elsewhere.

2. The principal goal of the Martinez drug organization was to acquire money and other wealth, through the distribution of controlled substances, namely cocaine and cocaine base also known as crack cocaine.

B. <u>Roles of the Defendants</u>

3. WAYNE ANTHONY PERRY provided counsel, advice and armed protection for Albert G. Martinez and the Martinez drug organization in exchange for cash, cocaine, and other property. WAYNE ANTHONY PERRY held a position as Martinez' chief enforcer and body guard. WAYNE ANTHONY PERRY also played a role in the Martinez drug organization as a drug trafficker.

a. As chief enforcer to the Martinez drug organization, WAYNE ANTHONY PERRY used armed and unarmed violence, threats, kidnappings, murders, and robberies to protect the Martinez drug organization, its members, proceeds, property, and illegal drugs, and to maintain internal discipline and control within the organization. He would perpetrate crimes of violence or procure and cause others to perpetrate crimes of violence against rival or competing drug traffickers or others to acquire drugs, cash, property, and to eliminate or stifle competition.

b. As chief body guard, WAYNE ANTHONY PERRY would perpetrate crimes of violence or procure and cause others

to perpetrate crimes of violence to maintain and promote Albert G. Martinez's position as head of the Martinez drug organization, to instill fear in the community which would enhance the reputation of Albert G. Martinez as a drug king-pin and to intimidate those who would act against Albert G. Martinez or any members of the Martinez drug organization.

c.  As drug trafficker, WAYNE ANTHONY PERRY would distribute cocaine or procure and cause others to distribute cocaine primarily in the vicinity of 203 N Street, S.W., and the Potomac Gardens apartment complex of Washington, D.C.  He and others would employ violence or threats of violence to collect debts owed the Martinez drug organization and to assure prompt payment of debts owed to the organization.

4.  WAYNE ANTHONY PERRY recruited a number of associates whom he trusted to assist him to commit drug trafficking crimes and crimes of violence in furtherance of the Martinez drug organization.  Among these recruited associates were TYRONE LASALLE PRICE, Thomas Leroy Dozier, Jerome Kearney, and other co-conspirators known and unknown to the grand jury. On occasion he and Albert G. Martinez would hire other persons, such as MICHAEL ANTHONY JACKSON and Shelton Cortez Watkins to commit crimes of violence in furtherance of the Martinez drug organization.

5. MICHAEL ANTHONY JACKSON was a confidential ally of Albert G. Martinez and WAYNE ANTHONY PERRY.  On occasion he would warn Albert G. Martinez and WAYNE ANTHONY PERRY about the plans of rival drug dealers that posed a threat to the Martinez drug

16

organization or any of its members.  He would also provide
information to WAYNE ANTHONY PERRY and Albert G. Martinez about the
plans of individuals within the organization to rob, steal or kill
other members of the Martinez drug organization, or about the plans
of individuals who would otherwise betray or injure the Martinez
drug organization.  MICHAEL ANTHONY JACKSON would provide this
information and would provide these services in exchange for guns,
cash, cocaine, and favored treatment by WAYNE ANTHONY PERRY, Albert
G. Martinez and members of the Martinez drug organization.

6. WAYNE ANTHONY PERRY and his associates would accept
deliveries of firearms procured by Albert G. Martinez from
intermediaries and "straw purchasers" in the Northern District of
Ohio and the Southern and Eastern Districts of New York, for use in
aid of drug trafficking crimes and crimes of violence all of which
furthered the Martinez drug organization.

7. At all times herein, Albert G. Martinez, also known
as "Alpo," was the leader and principal administrator of the
enterprise known as the Martinez drug organization.  Martinez
obtained hundreds of kilograms of cocaine primarily from his
sources of supply in the New York City area of the State of New
York, and would transport or cause the transportation of the
cocaine to numerous customers and lieutenants in the District of
Columbia, the District of Maryland and the Eastern District of
Virginia.  Martinez utilized a network of drug trafficking
lieutenants and customers who would accept delivery of the cocaine
on consignment or for cash, and who would in turn repackage and/or

resell the cocaine or manufacture the cocaine into cocaine base, also known as crack cocaine, for repackaging and resale.

C.  The Rico Conspiracy

8.  From in or about the Spring of 1988 to on or about December 18, 1991, within the District of Columbia, the District of Maryland, the Eastern District of Virginia, the Southern and Eastern Districts of New York, the Northern District of Ohio and elsewhere, the defendants WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, MICHAEL ANTHONY JACKSON, together with unindicted co-conspirators both known and unknown to the grand jury, being persons employed by and associated with the enterprise described above, which was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, knowingly and intentionally did combine, conspire, confederate, and agree with each other, and with persons known and unknown to the grand jury, to violate Title 18, United States Code, Section 1962(c); that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as that term is defined by Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of multiple acts of the following:

(a)  offenses involving the distribution and possession with intent to distribute cocaine and cocaine base, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2;

(b) offenses involving the conspiracy to distribute

and to possess with the intent to distribute cocaine and cocaine base in violation of Title 21, United States Code, Section 846;

(c) acts involving murder and attempted murder, armed robbery and armed and unarmed kidnapping, in violation of Title 22, D.C. Code, Section 2401, 2403, 2101, 2901, and 3202, which are punishable by a term of imprisonment for more than one year;

(d) offenses involving interstate travel in aid of a racketeering enterprise, to wit, travelling in interstate commerce with the intent to promote, manage, and facilitate unlawful activity involving violations of Title 21, United States Code, Section 846, and 841(a)(1) (conspiracy, distribution and possession with the intent to distribute controlled substances) in violation of Title 18, United States Code, Sections 1952(a)(3); and

(e) an offense involving retaliating against a witness, in violation of Title 18, U.S. Code, Section 1513(a)(2).

D.   The Pattern of Racketeering Activity

9.   It was further part of the conspiracy that each defendant agreed that at least two acts of racketeering activity would be committed in the conduct of the affairs of the enterprise.

10.   The pattern of racketeering activity through which the defendants conspired to conduct and participate in the conduct of the affairs of the enterprise known as the Martinez drug organization consisted of the racketeering acts set forth below, most of which as identified below, are alleged in the following

counts which are realleged and incorporated by reference herein as follows:

## RACKETEERING ACTS

| Predicate Act | Defendant or Co-conspirator | Offense/Date | Count | Violation |
|---|---|---|---|---|
| 1. | All Defendants | Conspiracy (Spring 1988-Dec. 1991) | Ct. 1 | 21 USC §846 |
| 2. | WAYNE ANTHONY PERRY | 1st Degree Murder of James Hinson (May 12, 1990) | Ct. 4 | 22 D.C. Code §§2401,3202, and 105. |
| 3. | WAYNE ANTHONY PERRY Thomas Leroy Dozier Albert G. Martinez | 1st Degree Murder of Domencio Benson (July 16, 1991) | Ct. 6 | 22 D.C. Code §§2401, 3202 and 105. |
| 4. | MICHAEL ANTHONY JACKSON WAYNE ANTHONY PERRY Albert G. Martinez | 1st Degree Murder of Michael Salters aka, Michael Frey (July 16, 1991) | Ct. 8 | 22 D.C. Code §§2401, 3202 and 105. |
| 5. | WAYNE ANTHONY PERRY Thomas Leroy Dozier Albert G. Martinez | 1st Degree Murder of Evelyn Carter (July 20, 1991) | Ct. 10 | 22 D.C. Code §§2401, 3202 and 105. |
| 6. | WAYNE ANTHONY PERRY TYRONE LASALLE PRICE Thomas Leroy Dozier Albert G. Martinez | 1st Degree Murder of Yolanda Burley (Sept. 24, 1991) | Ct. 12 | 22 D.C. Code §§2401, 3202 and 105. |
| 7. Part A | WAYNE ANTHONY PERRY TYRONE LASALLE PRICE Albert G. Martinez | Kidnapping of Alveta Hopkins (Sept. 28, 1991) | Ct. 16 | 22 D.C. Code §§2101, and 105. |
| 7. Part B | WAYNE ANTHONY PERRY TYRONE LASALLE PRICE Albert G. Martinez | 1st Degree Murder of of Alveta Hopkins (Sept. 28, 1991) | Ct. 14 | 22 D.C. Code §§2401, 3202 and 105. |

| Predicate Act | Defendant or Co-conspirator | Offense/Date | Count | Violation |
|---|---|---|---|---|
| 7. Part C | WAYNE ANTHONY PERRY TYRONE LASALLE PRICE | Retaliating Against a Witness, Alveta Hopkins (Sept. 28, 1991) | Ct. 15 | 18 U.S.C. §§1513 & 2. |
| 8. | WAYNE ANTHONY PERRY TYRONE LASALLE PRICE Thomas Leroy Dozier Jerome Kearney Albert G. Martinez | 1st Degree Murder of Garrett Terrell (Oct. 22-23, 1991) | Ct. 17 | 22 D.C. Code §§2401, 3202 and 105. |
| 9. Part A | WAYNE ANTHONY PERRY TYRONE LASALLE PRICE Thomas Leroy Dozier Jerome Kearney | Kidnapping While armed of Greg Edmond (Oct. 31, 1991) | Ct. 26 | 22 D.C. Code §§2101, 3202 and 105 |
| 9. Part B | WAYNE ANTHONY PERRY TYRONE LASALLE PRICE Thomas Leroy Dozier Jerome Kearney | Armed Robbery of Greg Edmond (Oct. 31, 1991) | Ct. 27 | 22 D.C. Code §§2901, 3202 and 105 |

## RICO Predicate Act 10

In or about the month of October, 1991 until November 7, 1991, within the District of Columbia, the defendants WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, together with Thomas Leroy Dozier, Jerome Kearney, Albert G. Martinez, and other co-conspirators not indicted herein, unlawfully, knowingly and intentionally distributed a mixture and substance containing a detectable amount of approximately 150 grams of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18, United States Code, Section 2).

## RICO Predicate Act 11

On or about December 26, 1989, within the District of Maryland, WAYNE ANTHONY PERRY, together with Albert G. Martinez,

and Shelton Cortez Watkins, while armed with a 25 caliber pistol, and a 38 caliber firearm, purposefully and with deliberate and premeditated malice killed David W. Short, also known as David Dew, also known as "Duke," by shooting him, thereby causing injuries from which David W. Short died on or about December 26, 1989, in violation of laws of the State of Maryland.

### RICO Predicate Act 12

On or about November 7, 1991, within the District of Columbia, Albert G. Martinez unlawfully, knowingly and intentionally did possess with the intent to distribute approximately 104.11 grams of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotics drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18, United States Code, Section 2).

### RICO Predicate Act 13

On or about November 7, 1991, in the Eastern District of Virginia, Albert G. Martinez unlawfully, knowingly and intentionally did possess with the intent to distribute 412.76 grams of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotics drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18, United States Code, Section 2).

### RICO Predicate Act 14

On or about July 25, 1989, within the District of Columbia, Albert G. Martinez, Shelton Cortez Watkins and another person whose identity is known to the grand jury, while armed with a 9 mm

pistol, purposefully and with deliberate and premeditated malice killed Lawrence Denny Harris by shooting him with a pistol, thereby causing injuries from which Lawrence Denny Harris died on or about July 25, 1989, in violation of 22 D.C. Code, Sections, 2401, 3202, and 105.

### RICO Predicate Act 15

On or about July 25, 1989, within the District of Columbia, Albert G. Martinez, Shelton Cortez Watkins and another person whose identity is known to the grand jury, while armed with a 9 mm pistol, attempted to murder Ricky Ellis in violation of 22 D.C. Code, Sections 2403, 3202, and 105.

### RICO Predicate Act 16

On or about February 10, 1991, within the District of Columbia, and Northern District of Ohio, and the Eastern and Southern Districts of New York, Albert G. Martinez, and Michael Kelly together with other co-conspirators known and unknown to the grand jury, did unlawfully, willfully, and knowingly travel in interstate commerce, from the District of Columbia to the States of Ohio and New York, and elsewhere, with the intent to promote, carry on and facilitate the promotion and carrying on of an unlawful activity, to wit: the distribution of and possession with intent to distribute cocaine and cocaine base, and the conspiracy to distribute and possess with the intent to distribute cocaine  and cocaine base, Schedule II narcotic drug controlled substances in violation of Title 21, United States Code, Sections 841 and 846; which is in violation of Title 18, United States Code, Sections

23

1952(a)(3).

### RICO Predicate Act 17

On or about February 24, 1991, within the District of
Columbia, and Northern District of Ohio, and the Eastern and
Southern Districts of New York, Albert G. Martinez, and Michael
Kelly together with other co-conspirators known and unknown to the
grand jury, did unlawfully, willfully, and knowingly travel in
interstate commerce, from the District of Columbia to the States of
Ohio and New York, and elsewhere, with the intent to promote, carry
on and facilitate the promotion and carrying on of an unlawful
activity, to wit: the distribution of and possession with intent to
distribute cocaine and cocaine base, and the conspiracy to
distribute and possess with the intent to distribute cocaine and
cocaine base, Schedule II narcotic drug controlled substances in
violation of Title 21, United States Code, Sections 841 and 846;
which is in violation of Title 18, United States Code, Sections
1952(a)(3).

### RICO Predicate Act 18

On or about February 27, 1991, within the District of
Columbia, and Northern District of Ohio, and the Eastern and
Southern Districts of New York, Albert G. Martinez, and Michael
Kelly together with other co-conspirators known and unknown to the
grand jury, did unlawfully, willfully, and knowingly travel in
interstate commerce, from the District of Columbia to the States of
Ohio and New York, and elsewhere, with the intent to promote, carry
on and facilitate the promotion and carrying on of an unlawful

activity, to wit: the distribution of and possession with intent to distribute cocaine and cocaine base, and the conspiracy to distribute and possess with the intent to distribute cocaine and cocaine base, Schedule II narcotic drug controlled substances in violation of Title 21, United States Code, Sections 841 and 846; which is in violation of Title 18, United States Code, Sections 1952(a)(3).

(In violation of Title 18, United States Code, Section 1962(d))

## COUNT THREE

### [CCE MURDER OF JAMES HINSON]

1.  Beginning in or about the Spring of 1988, the exact date being unknown to the grand jury, and continuing thereafter up to and including December 18, 1991, within the District of Columbia, the Eastern District of Virginia, the District of Maryland, the Eastern and Southern Districts of New York, the Northern District of Ohio, and elsewhere, Albert G. Martinez, also known as "Alpo," did engage in a continuing criminal enterprise, as the principal administrator of such enterprise, in that Albert G. Martinez, also known as "Alpo," did unlawfully, knowingly and intentionally violate Title 21, United States Code, Section 841(a)(1), and 846, which violations included but are not limited to:

a) the substantive violation alleged in Count One of this indictment which is realleged and incorporated by reference herein, in violation of Title 21, United States Code, Section 846; and

 b) the substantive violations alleged in Paragraph (C))(4) of the

Manner and Means along with overt acts 25, 30, and 32 of Count One of this indictment, which are realleged and incorporated by reference herein, which violations involve the unlawful, knowing and intentional distribution and possession with the intent to distribute a mixture and substance containing a detectable amount of cocaine and cocaine base, Schedule II narcotic drug controlled substances, in violation of Title 21, United States Code, Section 841(a)(1);

which violations were part of a continuing series of violations of the Comprehensive Drug Abuse Control Act of 1970, Title 21, United States Code, Sections 801 et. seq., undertaken by Albert G. Martinez, also known as "Alpo," in concert with at least five other persons with respect to whom defendant Albert G. Martinez, also known as "Alpo," occupied a position of organizer, supervisor and manager, and from which such continuing series of violations Albert Geddis Martinez, also known as "Alpo," obtained substantial income and resources, in violation of Title 21, United States Code Section 848(a) and which continuing criminal enterprise was the subject of Albert Geddis Martinez's also known as "Alpo's," conviction in the United States District Court for the Eastern District of Virginia, on February 20, 1992, in Criminal No. 91-526-A.

2. On or about May 12, 1990, within the District of Columbia, the defendant WAYNE ANTHONY PERRY while engaged in and working in furtherance of the continuing criminal enterprise alleged in paragraph 1 of this count in this indictment, aided and abetted, counseled, commanded, induced, procured, and caused the intentional

killing of James Hinson, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2)

## COUNT FOUR

[FIRST DEGREE PREMEDITATED MURDER OF JAMES HINSON]

On or about May 12, 1990, within the District of Columbia, the defendant WAYNE ANTHONY PERRY, while armed with a pistol, purposely and with deliberate and premeditated malice killed James Hinson by shooting him with a pistol, thereby causing injuries from which James Hinson died on or about May 12, 1990.

(In violation of Title 22, D.C. Code, Sections 2401, 3202 and 105)

## COUNT FIVE

[CCE MURDER OF DOMENCIO BENSON]

1.   Paragraph one of Count Three above is realleged and incorporated by reference herein.

2.   On or about July 16, 1991, within the District of Columbia, the defendant WAYNE ANTHONY PERRY, and other co-conspirators known and unknown to the grand jury, while engaged in and working in furtherance of the continuing criminal enterprise alleged in paragraph 1 of this count in this indictment, aided and abetted, counseled, commanded, induced, procured, and caused the intentional killing of Domencio Benson and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2)

## COUNT SIX

[FIRST DEGREE PREMEDITATED MURDER OF DOMENCIO BENSON]

On or about July 16, 1991, within the District of Columbia,

27

the defendant WAYNE ANTHONY PERRY, and others known and unknown to
the grand jury, while armed with a pistol, purposely and with
deliberate and premeditated malice killed Domencio Benson by
shooting him with a pistol, thereby causing injuries from which
Domencio Benson died on or about July 16, 1991. (In violation of
Title 22, D.C. Code, Sections 2401, 3202 and 105)

<u>COUNT SEVEN</u>

[CCE MURDER OF MICHAEL SALTERS, AKA MICHAEL FRAY]

1.   Paragraph one of Count Three above is realleged and
incorporated by reference herein.

2.   From on or about July 16, 1991 to on or about July 17,
1991, within the District of Columbia, the defendants WAYNE ANTHONY
PERRY, MICHAEL ANTHONY JACKSON, and other co-conspirators known and
unknown to the grand jury, while engaged in and working in
furtherance of the continuing criminal enterprise alleged in
paragraph 1 of this count in this indictment, aided and abetted,
counseled, commanded, induced, procured, and caused the intentional
killing of Michael Salters, also known as Michael Frey and such
killing resulted.

(In violation of Title 21, United States Code, Section
848(e)(1)(A), and Title 18, United States Code, Section 2)

<u>COUNT EIGHT</u>

[FIRST DEGREE PREMEDITATED MURDER OF
MICHAEL SALTERS, AKA MICHAEL FRAY]

On or about July 16, 1991, within the District of Columbia,
the defendants WAYNE ANTHONY PERRY, MICHAEL ANTHONY JACKSON, and

others known and unknown to the grand jury, while armed with a pistol, purposely and with deliberate and premeditated malice killed Michael Salters also known as Michael Frey, by shooting him with a pistol, thereby causing injuries from which Michael Salters also known as Michael Frey died on or about July 17, 1991.

(In violation of Title 22, D.C. Code, Sections 2401, 3202 and 105)

## COUNT NINE

### [CCE MURDER OF EVELYN CARTER]

1.   Paragraph one of Count Three above is realleged and incorporated by reference herein.

2.   From on or about July 20, 1991 to on or about July 21, 1991, within the District of Columbia, the defendants WAYNE ANTHONY PERRY, and other co-conspirators known and unknown to the grand jury, while engaged in and working in furtherance of the continuing criminal enterprise alleged in paragraph 1 of this count in this indictment, aided and abetted, counseled, commanded, induced, procured, and caused the intentional killing of Evelyn Carter and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2)

## COUNT TEN

### [FIRST DEGREE PREMEDITATED MURDER OF EVELYN CARTER]

On or about July 20, 1991, within the District of Columbia, the defendant WAYNE ANTHONY PERRY, and others known and unknown to the grand jury, while armed with a pistol, purposely and with

deliberate and premeditated malice killed Evelyn Carter, by shooting her with a pistol, thereby causing injuries from which Evelyn Carter died on or about July 21, 1991.

(In violation of Title 22, D.C. Code, Sections 2401, 3202, 105)

## COUNT ELEVEN

### [CCE MURDER OF YOLANDA BURLEY]

1.   Paragraph one of Count Three above is realleged and incorporated by reference herein.

2.   On or about September 24, 1991, within the District of Columbia, the defendants WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, and other co-conspirators known and unknown to the grand jury, while engaged in and working in furtherance of the continuing criminal enterprise alleged in paragraph 1 of this count in this indictment, aided and abetted, counseled, commanded, induced, procured, and caused the intentional killing of Yolanda Burley and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2)

## COUNT TWELVE

### [FIRST DEGREE PREMEDITATED MURDER OF YOLANDA BURLEY]

On or about September 24, 1991, within the District of Columbia, the defendants WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, and others known and unknown to the grand jury, while armed with a pistol and a dangerous and deadly weapon, that is a knife, purposely and with deliberate and premeditated malice killed Yolanda Burley, by shooting her with a pistol and stabbing her with

a knife, thereby causing injuries from which Yolanda Burley died on or about September 24, 1991.

(In violation of Title 22, D.C. Code, Sections 2401, 3202, 105)

<u>COUNT THIRTEEN</u>

[CCE MURDER OF ALVETA HOPKINS]

1.   Paragraph one of Count Three above is realleged and incorporated by reference herein.

2.   From on or about September 28, 1991 to on or about September 29, 1991, within the District of Columbia, the defendants WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, and other co-conspirators known and unknown to the grand jury, while engaged in and working in furtherance of the continuing criminal enterprise alleged in paragraph 1 of this count in this indictment, aided and abetted, counseled, commanded, induced, procured, and caused the intentional killing of Alveta Hopkins, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2)

<u>COUNT FOURTEEN</u>

[FIRST DEGREE PREMEDITATED MURDER OF ALVETA HOPKINS]

From on or about September 28, 1991 to on or about September 29, 1991, within the District of Columbia, the defendants WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, and others known and unknown to the grand jury, while armed with a pistol, purposely and with deliberate and premeditated malice killed Alveta Hopkins by shooting her with a pistol, thereby causing injuries from which Alveta Hopkins died on or about September 29, 1991.

31

(In violation of Title 22, D.C. Code, Sections 2401, 3202, 105)

## COUNT FIFTEEN

### [RETALIATING AGAINST A WITNESS, ALVETA HOPKINS]

From on or about September 28, 1991 to on or about September 29, 1991, within the District of Columbia, the defendants WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, and others known and unknown to the grand jury, caused bodily injury to Alveta Hopkins by killing her, with the intent to retaliate against Alveta Hopkins for attendance and testimony at a grand jury proceeding in the Superior Court for the District of Columbia (F6082-90) and for providing information to a law enforcement officer relating to the possible commission of an offense in violation of Title 21, U.S. Code Sections 841 and 848.

(In violation of Title 18, United States Code, Sections 1513 and 2)

## COUNT SIXTEEN

### [KIDNAPPING OF ALVETA HOPKINS]

On or about September 28, 1991 within the District of Columbia, the defendants WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, and others known and unknown to the grand jury, seized, confined, kidnapped, abducted, and carried away Alveta Hopkins with intent to hold and detain Alveta Hopkins for the purpose of assaulting her.

(In violation of 22 D.C. Code, Sections 2101 and 105)

## COUNT SEVENTEEN

### [CCE MURDER OF GARRETT TERRELL]

1.   Paragraph one of Count Three above is realleged and incorporated by reference herein.

2.  From on or about October 22, 1991 to on or about October 23, 1991, within the District of Columbia, the defendants WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, and other co-conspirators known and unknown to the grand jury, while engaged in and working in furtherance of the continuing criminal enterprise alleged in paragraph 1 of this count in this indictment, aided and abetted, counseled, commanded, induced, procured, and caused the intentional killing of Garrett Terrell and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2)

## COUNT EIGHTEEN

[FIRST DEGREE PREMEDITATED MURDER OF GARRETT TERRELL]

From on or about October 22, 1991 to on or about October 23, 1991, within the District of Columbia, the defendants WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, and others known and unknown to the grand jury, while armed with pistols, purposely and with deliberate and premeditated malice killed Garrett Terrell by shooting him with pistols, thereby causing injuries from which Garrett Terrell died on or about October 23, 1991.

(In violation of Title 22, D.C. Code, Sections 2401, 3202, 105)

## COUNTS 19 - 25: USE OF A FIREARM IN AID OF A CRIME OF VIOLENCE OR DRUG TRAFFICKING CRIME

On or about the dates set forth below, in the District of Columbia, the defendants named below did knowingly, willfully and unlawfully use and carry a firearm during and in relation to a crime of violence and a drug trafficking crime, which are felonies

33

prosecutable in a court of the United States, as set forth below and as further described in the counts or overt acts [OA] of Count One of this indictment which are realleged and incorporated as if fully set forth herein:

| Count | Date | Defendants | Firearm | Where Found |
|-------|------|-----------|---------|-------------|
| 19. | 5-12-90 | WAYNE ANTHONY PERRY | 380 caliber pistol | Ct. 3, OA 7 in Ct.1 |
| 20. | 7-16-91 | WAYNE ANTHONY PERRY | 9 mm Luger pistol | Ct. 5, OA 14 in Ct. 1 |
| 21. | 7-16&17, -91 | WAYNE ANTHONY PERRY MICHAEL ANTHONY JACKSON | 9 mm semi-automatic pistol | Ct. 7, OA 17 in Ct.1 |
| 22. | 7-20-91 | WAYNE ANTHONY PERRY | 9 mm semi-automatic pistol | Ct. 9, OA 19 in Ct. 1 |
| 23. | 9-24-91 | WAYNE ANTHONY PERRY TYRONE LASALLE PRICE | 10 mm Smith & Wesson semi-automatic pistol | Ct. 11, OA 21 in Ct. 1 |
| 24. | 9-28&29 -91 | WAYNE ANTHONY PERRY TYRONE LASALLE PRICE | 32 caliber pistol | Ct. 13, OA 24 in Ct. 1 |
| 25. | 10-22& 23-91 | WAYNE ANTHONY PERRY TYRONE LASALLE PRICE | 9 mm semi-automatic and 38 cal. pistol | Ct. 17, OA 27 in Ct. 1 |

(In violation of Title 18, United States Code, Sections 2 and 924(c)(1)).

## COUNT TWENTY-SIX

### [ARMED KIDNAPPING OF GREG EDMOND]

On or about October 31, 1991, within the District of Columbia, the defendants WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, and others known and unknown to the grand jury, while armed with a

34

pistol or imitation thereof, seized, confined, kidnapped, abducted, and carried away Greg Edmond, with intent to hold and detain Greg Edmond for the purpose of robbing Greg Edmond of property and money.

(In violation of Title 22, D.C. Code, Sections 2101, 3202, and 105)

### COUNT TWENTY-SEVEN

#### [ARMED ROBBERY OF GREG EDMOND]

On or about October 31, 1991, within the District of Columbia, the defendants WAYNE ANTHONY PERRY, TYRONE LASALLE PRICE, and others known and unknown to the grand jury, while armed with a pistol or imitation thereof, by force and violence, against resistance and by putting in fear, stole and took from the person and from the immediate actual possession of Greg Edmond, property of value belonging to Greg Edmond, consisting of a safety-deposit box key and money.

(In violation of Title 22, D.C. Code, Sections 2901, 3202, and 105)

A TRUE BILL:

_Ozell Simmons_
Foreperson

_J.B. Stephens_
Attorney of the United States in
and for the District of Columbia